01

02

03

04          UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
05                    AT SEATTLE

06  ALAN SCOTT ANDRE,                    )    CASE NO.: C06-0503-JCC
                                         )
07          Petitioner,                  )
                                         )
08      v.                               )    REPORT AND RECOMMENDATION
                                         )
09  DOUG WADDINGTON,                     )
                                         )
10          Respondent.                  )
    _____ )

11

12          Petitioner Alan Scott Andre proceeds *pro se* in this 28 U.S.C. § 2254 habeas action.  (Dkt.

13  5.)  He is in custody pursuant to a 2002 conviction by jury verdict of three counts of Child

14  Molestation in the First Degree.  (Dkt. 19, Ex. 1.)  Petitioner raises eight grounds for relief in his

15  habeas petition. (Dkt. 5.)  Respondent filed an answer to the petition with relevant portions of the

16  state court record.  (Dkts. 17 & 19.)  Respondent argues that petitioner failed to properly exhaust

17  five of his grounds for relief and that the three exhausted claims lack merit.  (Dkts. 17 & 25.)

18  Petitioner concedes that he failed to exhaust two of his claims, but maintains the exhaustion and

19  merit of his remaining claims.  (Dkt. 24.)  The Court has considered the record relevant to the

20  grounds raised in the petition, including all hearing transcripts.  For the reasons discussed herein,

21  it is recommended that petitioner's habeas petition be denied and this action dismissed.

22  / / /

REPORT AND RECOMMENDATION
PAGE -1

01                                          I

02        The Washington Court of Appeals summarized the facts surrounding petitioner's

03   conviction as follows:

04        Gina and Greg Levinson have two young daughters, H.L. and C.L. Gina and
         Greg separated in 1995 and their divorce became final in 1998. After they separated,
05       Greg began dating and eventually married Lori Levinson. H.L. and C.L. lived with
         their mother but spent every other weekend and two months in the summer with their
06       father.

07        Alan Andre and Gina met and began dating in 1997. They lived together in
         Renton and soon thereafter had a son. Between 1997 and 1999, Andre, Gina, and the
08       three children moved to Oregon, Chicago, and Indiana because of Andre's
         employment. In the summer of 1999, Andre and Gina separated and Gina and the
09       children moved back to Washington. About a year later, the couple reconciled and
         Andre moved in with Gina and the children on Mercer Island.

10
         On a Sunday afternoon in April 2001, when H.L. was eleven years old, she
11       told her stepsister, and then her father and Lori, that Andre had inappropriately
         touched her.

12
         A couple of days later, H.L. disclosed what had happened to her school
13       counselor. She told the counselor that Andre would rub her back and snuggle with
         her at night and then he would touch her "private." The counselor called Gina and
14       Child Protective Services (CPS).

15        Mercer Island Police Detective Meta Barden investigated H.L.'s allegations.
         Detective Barden, together with a CPS caseworker, interviewed H.L. at school.

16
         A few days later, Andre agreed to meet with Detective Barden and discuss
17       H.L.'s allegations. During the two-hour taped interview, Andre denied molesting
         H.L. but acknowledged that he had probably inadvertently touched her breasts and
18       buttocks when he was with her at bedtime. He said that H.L. had Attention Deficit
         Disorder (ADD) and the medication she took caused her to have trouble falling
19       asleep. Because of this, she often asked him to rub her back at night. He also said
         that at one point H.L. asked that he not lay so close to her. He was not sure why she
20       made this request and said he tried from then on to stay further away from her body
         when he was with her at bedtime.

21
         The State charged Andre with three counts of first degree child molestation
22       alleging that Andre molested H.L. three times during the six month period between

REPORT AND RECOMMENDATION
PAGE -2

01  September 2000 and February 2001 when Andre lived with Gina and the children on
    Mercer Island.

02

03          At trial, H.L. testified that Andre repeatedly touched her on her breasts,
    buttocks and vaginal area during a three-year period.  She said that on one occasion
    she asked him to stop and he complied for awhile.  H.L. also acknowledged that when

04  she was six-years old and her father and Lori were first dating, she reported that Lori
    had inappropriately touched her.  She later admitted that she made up these

05  allegations because at the time she did not like Lori and did not want her father and
    Lori to be together.

06

07          At trial, Andre argued H.L. made up the allegations against him with the same
    motive as when she made up allegations against Lori in 1997.  His defense also
    focused on the inconsistencies between H.L.'s testimony at trial and the statements

08  she previously gave to the school counselor and Detective Barden.

09          The jury convicted Andre of first degree child molestation on all three counts.
    Andre requested a sex offender alternative sentence.  The court denied his request and

10  imposed a high end standard range sentence of 130 months on each count to run
    concurrently.

11

12          Andre filed a motion for a new trial based on juror misconduct alleging the
    jury had improperly considered extrinsic information about H.L.'s ADD.  The court
    held a hearing on Andre's motion and several jurors testified.  The trial court decided

13  the jury did not impermissibly rely on extrinsic evidence and entered written findings
    of fact and conclusions of law denying the motion for a new trial. . . .

14

15  (Dkt. 19, Ex. 2 at 1-4 (footnotes omitted.))

16          Petitioner appealed his conviction to the Washington Court of Appeals.  (*Id*., Ex. 3.)  His

17  counsel raised the following grounds for review:

18          1.      Prior to trial, appellant was interviewed by a police detective.  During
    the interview, appellant made numerous inculpatory and exculpatory statements.  The

19  state sought to, and did, introduce at trial numerous sections of the interview
    transcript.  Due to the amount of the transcript admitted by the state, appellant sought

20  to introduce the entire transcript of the interview.  After being refused the entire
    transcript by the court, appellant sought to admit additional transcript sections to

21  explain those introduced by the state.  While the court admitted some of these
    additional portions, it refused many others.  Significant refused portions contained

22  exculpatory statements.

REPORT AND RECOMMENDATION
PAGE -3

Did the trial court err by not admitting the entire interview transcript where the remainder of the transcript would have explained or clarified the parts admitted by the state, and where the transcript contained exculpatory statements which were not introduced? In the alternative, did the trial court err by refusing to admit sections of the transcript specifically requested by appellant to explain or clarify sections already admitted by the state?

2.    The state called Diana Low, who had been the alleged victim's fifth-grade teacher for only four months. She was unaware of the alleged victim's reputation in the school and, based on the fact that no one had complained to her about the alleged victim lying, testified that she believed the alleged victim had a good reputation for honesty. Did the trial court err when it allowed Low to testify to the alleged victim's reputation when she admitted she was unaware of that reputation?

3.    The alleged victim had made a prior allegation of the same nature against a different person, Lori Levinson, which the alleged victim admitted was false. The prosecutor's opening statement told the jury Levinson now believed that the alleged victim was telling the truth in this instance and was going to testify on her behalf. Additionally, during rebuttal closing argument, the prosecutor implied that defense counsel was bullying a child witness. Did the trial court err by not granting appellant a new trial based on prosecutorial misconduct?

4.    The alleged victim suffered from Attention Deficit/Hyperactivity Disorder (ADD). While on the witness stand, the alleged victim was confronted with several inconsistent statements she had made, which she had difficulty explaining. After the verdict, several jurors testified that they considered the alleged victim's ADD when analyzing her difficulty answering questions and when determining her credibility. In addition, several jurors informed the other jurors of extrinsic evidence pertaining to ADD, which the defense had no chance to hear or rebut. Did the trial court err by denying appellant's new trial motion based on juror misconduct?

(*Id*. at 2-3.) He also argued that cumulative error in the trial required reversal. (*Id*. at 48-50.)

The Washington Court of Appeals affirmed the conviction. ( *Id*., Ex. 2.) Petitioner petitioned for review *pro se*, raising the following issues:

**1.    Interview Transcript**

In Brady v. Maryland, 373 U.S. 83, 87, 83, S. Ct. 1194, 10 L.Ed.2d 215, the court held that suppression of evidence favorable to the accused upon request violates due process where the evidence is material to guilt or punishment.

REPORT AND RECOMMENDATION
PAGE -4

In this case only about 11 pages of a 72-page transcript were admitted into evidence. The trial court abused its discretion in not admitting enough of the transcript that included exculpatory statements. Andre attempted to admit the tape itself, because the context of any statements construed to be inculpatory would be explained and Andre's truthfulness would have been determined based upon his tone of voice and inflections. This refusal violates the "rule of completeness" and gives a distorted meaning of the statements made, causing prejudice.

The United States Supreme Court recently ruled that police cannot extract information from suspects and only then inform them of their rights. Andre was not read his rights prior to questioning and therefore the transcript may not be admitted at all.

### 2.    Reputation Testimony

State v. Lord, 117 Wn. 2d 829, 873, 822, P.2d 177 (1991) (Quoting 5A Karl B. Tegland, Wash. Prac. Evidence , §231 at 201-04 (3d ed. 1989)) outlined the requirements for reputation testimony to be admitted.

Andre contends that the trial court erred in its allowing reputation testimony based on its definition of a community and the Court of Appeals erred in its decision upholding the trial court.

### 3.    Prosecutorial Misconduct

In State v. Case, 49 Wn. 2d 66, 70-71, 298 P.2d 500 (1956), the court held that a prosecutor must seek "no conviction through the aid of passion, sympathy or resentment."

Andre contends that the prosecutor's remarks in opening and closing arguments constituted prosecutorial misconduct, the trial court should have declared a mistrial, and the Court of Appeals erred in its ruling upholding the trial court.

### 4.    Juror Misconduct

In State v. Briggs, 55 Wn. App. 44, 59, 776 P.2d 1347 (1989) the Court held that a jury is expected to bring opinions, insight, common sense and everyday experience to deliberations, but evidence outside a typical juror's general experience should not be introduced. Accordingly, the interjection of extrinsic evidence into deliberations violates this principle as well as violates the accused's right to due process. U.S. Const. Amend. 14, Const. Article 1, §3. Thus, a juror introducing extrinsic evidence constitutes misconduct.

REPORT AND RECOMMENDATION
PAGE -5

01      Andre contends that juror comments made regarding [H.L.'s] attention deficit
disorder (ADD) were extrinsic evidence and not personal life experience and the trial
02   court erred in not declaring a mistrial when the evidence was discovered.

03      **5.    Cumulative Error**

04      The combined effects of errors may require a new trial even where no single
error warrants reversal. <u>State v. Coe</u>, 101 Wn. 2d 772, 789, 684 P.2d 699 (1984) and
05   <u>State v. Perrett</u>, 86 Wn. App. 312, 322, 936 P.2d 426, rev. denied, 133 Wn. 2d 1019.

06      Andre contends that the cumulative errors of (1) the court's refusal to admit
the entire transcript of Andre's interview with Mercer Island Detective Metta Barden
07   (Barden); (2) improper reputation testimony; (3) the prosecutorial misconduct; and,
(4) juror misconduct warrant a new trial.
08
        **6.    The Verdict is Contrary to the Law and Evidence**
09
10      A charge of child molestation can only be proved if sexual gratification is
proved.  <u>State v. Jones</u>, 71 Wn. App. 798, 825-26, 863 P.2d 85 (1993).  The state
offered no evidence even suggesting sexual gratification.
11

12   (*Id.*, Ex. 5 at 1-4.)  The Washington Supreme Court denied the petition for review without

13   discussion.  (*Id.*, Ex. 6.)  The Washington Court of Appeals issued its mandate on April 8, 2005.

14   (*Id.*, Ex. 7.)

15      Again proceeding *pro se*, petitioner filed a personal restraint petition in the Washington

16   Court of Appeals, raising three claims: (1) failure to give *Miranda* warnings during custodial

17   questioning; (2) insufficient evidence to convict; and (3) prosecutorial misconduct through

18   overcharging during trial and before jury deliberation.  (*Id.*, Ex. 8.)  The Washington Court of

19   Appeals dismissed the petition.  (*Id.*, Ex. 11.)  Raising the same issues, petitioner filed a motion

20   for discretionary review with the Washington Supreme Court.  (*Id.*, Ex. 12.)  The Commissioner

21   of the Supreme Court denied review and the Washington Court of Appeals issued its certificate

22   of finality on April 25, 2006.  (*Id.*, Exs. 13 & 14.)

REPORT AND RECOMMENDATION
PAGE -6

01                                              II

02       Petitioner now raises the following grounds for relief:

03       1.     Mercer Island police violated my right of self incrimination.  (Failure to give
                *Miranda* warning).
04

05       2.     The evidence presented at trial does not meet the criteria of the law.  (Insufficient
                evidence to convict).

06       3.     Prosecution abused discretion by adding multiple charges.  (Overcharging).

07       4.     The trial court erred by not allowing the entire transcript of my interview with
                Detective Barden.
08

09       5.     The trial court erred in allowing Diana Law to testify to H.L.'s reputation at the
                school.

10       6.     Prosecutorial misconduct deprived me of a fair trial.  (Opening and closing
                statements).
11

12       7.     Juror misconduct deprived me of a fair trial.  (Discussion of extrinsic evidence of
                ADD by the jury).

13       8.     Cumulative error.

14  (Dkt. 5 at 6-12.)

15       Respondent asserts that petitioner failed to properly exhaust his third, fourth, fifth, sixth,

16  and eighth claims, and that these claims are now procedurally barred.  Respondent further argues

17  that petitioner's first, second, and seventh claims fail on the merits.  Petitioner concedes that he

18  failed to exhaust his third and fifth claims, but maintains he properly exhausted his remaining

19  claims.  The Court addresses respondent's exhaustion argument first.

20                                              III

21       "An application for a writ of habeas corpus on behalf of a person in custody pursuant to

22  the judgment of a State court shall not be granted unless it appears that . . . the applicant has

REPORT AND RECOMMENDATION
PAGE -7

01  exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  The

02  exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve

03  federal constitutional claims before those claims are presented to the federal courts," and,

04  therefore, requires "state prisoners [to] give the state courts one full opportunity to resolve any

05  constitutional issues by invoking one complete round of the State's established appellate review

06  process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

07          A complete round of the state's established review process includes presentation of a

08  petitioner's claims to the state's highest court. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).

09  However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which

10  its merits will not be considered absent special circumstances does not constitute fair

11  presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*,

12  489 U.S. 346, 351 (1989)).  Consequently, presentation of a federal claim for the first time to a

13  state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*,

14  489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004), *cert. denied* 125 S.Ct.

15  2975 (2005). *But see Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to

16  be presented with a particular federal claim reaches the merits, it removes any bar to federal-court

17  review that might otherwise have been available.")

18          Additionally, a petitioner must "alert the state courts to the fact that he was asserting a

19  claim under the United States Constitution." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.

20  1999) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).  "The mere similarity between a

21  claim of state and federal error is insufficient to establish exhaustion." *Id.* (citing *Duncan*, 513

22  U.S. at 366).  "Moreover, general appeals to broad constitutional principles, such as due process,

REPORT AND RECOMMENDATION
PAGE -8

01 equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Id.* (citing

02 *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

03        Pursuant to RCW 10.73.090, no petition or motion for collateral attack on a judgment and

04 sentence in a criminal case may be filed more than a year after the judgment becomes final.

05 Additionally, if the state court expressly declined to consider the merits of a claim based on an

06 independent and adequate state procedural rule, or if an unexhausted claim would now be barred

07 from consideration by the state court based on such a rule, a petitioner must demonstrate a

08 fundamental miscarriage of justice, or cause, *i.e.* some external objective factor that prevented

09 compliance with the procedural rule, and prejudice, *i.e.* that the claim has merit. *See Coleman v.*

10 *Thompson*, 501 U.S. 722, 735 n.1, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).

11        In this case, because petitioner concedes his failure to exhaust his third and fifth grounds

12 for relief, the Court need only address whether petitioner properly exhausted his fourth, sixth, and

13 eighth grounds for relief.  For the reasons described below, the Court agrees with respondent that

14 petitioner failed to properly exhaust these claims.

15        Petitioner's fourth ground for relief asserts error in the trial court's refusal to admit the

16 entire transcript of his interview with Detective Barden.  In the Washington Court of Appeals,

17 petitioner argued that this refusal violated the evidentiary "rule of completeness" and referenced

18 the effect of the admission of an incomplete statement on the Fifth Amendment right not to testify.

19 (Dkt. 19, Ex. 3 at 17-30.)  In the Washington Supreme Court, petitioner again asserted a violation

20 of the rule of completeness and asserted arguments as to *Brady* and *Miranda* violations.  (*Id.*, Ex.

21 5 at 6-7) (referring to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Miranda v. Arizona*, 384 U.S.

22 436 (1966)).  Here, petitioner asserts a violation of the rule of completeness – an evidentiary rule,

REPORT AND RECOMMENDATION
PAGE -9

01  not a federal constitutional claim – and the resulting denial of a fair trial – a Fourteenth

02  Amendment due process claim.  Because petitioner failed to present this due process claim in

03  either the Washington Court of Appeals or the Washington Supreme Court, and because he failed

04  to exhaust any of the constitutional claims raised in the state courts by failing to complete one

05  round of the state's appellate review process with respect to each of those claims, petitioner's

06  fourth ground for relief is unexhausted and now procedurally barred.

07        In his sixth ground for relief, petitioner asserts prosecutorial misconduct in opening and

08  closing statements.  Although petitioner presented this argument as a federal constitutional

09  violation in the Washington Court of Appeals, he failed to do so in the Washington Supreme

10  Court.  (*See* Dkt. 19, Ex. 3 at 35-41 & Ex. 5 at 9-10.)  It is not enough to state, as asserted by

11  petitioner here, that this claim was implied in his petition for review in the Washington Supreme

12  Court.  *See generally Hiivala*, 195 F.3d at 1106 (petitioner must "alert the state courts to the fact

13  that he was asserting a claim under the United States Constitution.")  Nor do the cases cited by

14  petitioner in support of this proposition apply in this case.  *See, e.g., Beam v. Paskett*, 3 F.3d

15  1301, 1305-1307 (9th Cir. 1993) (discussing state mandatory review provisions for death penalty

16  cases which require states  to review for specific types of errors and where a finding of no error

17  therefore constitutes state consideration and implied exhaustion),  *overruled in part on other*

18  *grounds by Lambright v. Stewart*, 191 F.3d 1181, 1186 -87 (9th Cir.1999).  As such, petitioner's

19  sixth ground for relief is unexhausted and now procedurally barred.

20        Petitioner's eighth ground for relief asserts cumulative error.  However, petitioner failed

21  to raise this claim as a federal constitutional violation in either the Washington Court of Appeals

22  or the Washington Supreme Court.  (*See* Dkt. 19, Ex. 3 at 48-50 & Ex. 5 at 13-14.)  Petitioner's

01   general assertion in his state court briefing that the cumulative error deprived him of his right to

02   a fair trial does not suffice to establish exhaustion.  *See Hiivala*, 195 F.3d at 1106  ("Moreover,

03   general appeals to broad constitutional principles, such as due process, equal protection, and the

04   right to a fair trial, are insufficient to establish exhaustion.")  Nor, for the reasons described above,

05   can petitioner assert implied exhaustion of this claim.  Accordingly, petitioner's eighth ground for

06   relief is unexhausted and now procedurally barred.

07          In sum, petitioner failed to exhaust his third, fourth, fifth, sixth, and eighth grounds for

08   relief, and fails to demonstrate either cause or prejudice excusing his procedural default.  Having

09   considered the issue of exhaustion, the Court directs its attention to the merits of petitioner's

10   exhausted claims.

11                                                          IV

12          This Court's review of the merits of petitioner's claims is governed by 28 U.S.C. §

13   2254(d)(1).  Under that standard, the Court cannot grant a writ of habeas corpus unless a

14   petitioner demonstrates that he is in custody in violation of federal law and that the highest state

15   court decision rejecting his grounds was either "contrary to, or involved an unreasonable

16   application of, clearly established Federal law, as determined by the Supreme Court of the United

17   States."  28 U.S.C. § 2254(a) and (d)(1).  The Supreme Court holdings at the time of the state

18   court decision will provide the "definitive source of clearly established federal law[.]"  *Van Tran*

19   *v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer*

20   *v. Andrade*, 538 U.S. 63 (2003).  A state-court decision is contrary to clearly established

21   precedent if it "'applies a rule that contradicts the governing law set forth in'" a Supreme Court

22   decision, or "'confronts a set of facts that are materially indistinguishable'" from such a decision

01  and nevertheless arrives at a different result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting

02  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

03  Ground One

04      In his first ground for relief, petitioner argues that the Mercer Island police violated his

05  right against self-incrimination by failing to give him *Miranda* warnings.  *See Miranda,* 384 U.S.

06  at 479 (requiring police to advise suspects that they have the right to remain silent, that anything

07  they say may be used against them in court, and that they are entitled to the presence of an

08  attorney during questioning.)  "*Miranda* warnings are due only when a suspect interrogated by the

09  police is 'in custody.'"  *Thompson v. Keohane*, 516 U.S. 99, 101 (1995).  Petitioner argues that

10  he was in custody at the time of his statements to Detective Barden.

11      The trial court held a hearing on the admissibility of petitioner's statements to the police.

12  (*See* Dkt. 19, Ex. 15 at 42-95.)  Detective Barden testified that petitioner was not in custody at

13  the time of the interview, that she told petitioner he did not have to talk to her and was free to

14  leave, and that, until the conclusion of the interview, no decision had been made to place petitioner

15  under arrest.  (*Id*. at 50, 54-55, 82.)  The court rejected petitioner's motion to suppress his

16  statements, concluding he was not in custody, was free to leave, and knowingly and intelligently

17  spoke to Detective Barden.  (Dkt. 19, Ex. 9 at Appx. C.)

18      In considering petitioner's *Miranda* argument, the Washington Court of Appeals held as

19  follows:

20          Andre first argues that the trial court should have suppressed the statement he
            gave to Detective Barden because she did not warn him of his rights under Miranda
21          v. Arizona before she questioned him.

22          A Miranda warning is intended to protect a defendant's right not to make

REPORT AND RECOMMENDATION
PAGE -12

01    incriminating statements while in the coercive environment of police custody. <u>State
      v. Harris</u>, 106 Wn.2d 784, 789, 725 P.2d 975 (1986).   The safeguards apply in

02    circumstances where there is a possibility of coercion.   <u>See State v. Short</u>, 113 Wn.2d
      35, 41, 775 P.2d 458 (1989) (focus is on the possibility of coercion, not whether an

03    officer had probable cause to arrest).   A suspect's freedom of action must be so
      limited to a degree associated with formal arrest.   <u>Harris</u>, 106 Wn.2d at 789.

04
             Whether a <u>Miranda</u> warning was warranted is determined from the perspective

05    of a reasonable man in the suspect's position.   <u>Short</u>, 113 Wn.2d at 41.   The sole
      inquiry is whether the suspect reasonably supposed his freedom of action was

06    curtailed.   If a defendant not yet charged with a crime voluntarily cooperates with
      questioning as part of a routine, general investigation, a    <u>Miranda</u> warning is not

07    required. <u>Id</u>.

08           The situation here did not warrant a <u>Miranda</u> warning.   The following facts
      were undisputed and are verities. <u>See State v. Lopez</u>, 152 Wn.2d 22, 30, 93 P.2d 133

09    (2004) (unchallenged findings of fact entered after a suppression hearing are treated
      as verities on appeal).     Andre went to the Mercer Island Police Department

10    voluntarily.  He knew he was there to discuss H.L.'s allegations and agreed to allow
      his statement to be recorded.  The door to the room where he was interviewed was

11    closed but not locked.  Andre was free to leave during the interview.[1]

12           A reasonable person in Andre's position would not suppose that his freedom
      of action was curtailed to the same degree as a formal arrest.   The omission of a

13    <u>Miranda</u> warning does not entitle Andre to relief.

14    (Dkt. 19, Ex. 11 at 4-5 (one footnoted citation omitted.))

15           Petitioner here maintains he was never told he was allowed to leave his interview with

16    Detective Barden, which took place in a closed room with two detectives present.  He notes that

17    she failed to include this information in the tape of the interview.  Petitioner argues that, given the

18    circumstances of the interview, a reasonable person would not have believed himself free to leave.

19    He adds that, during arguments on this issue prior to trial, the prosecuting attorney admitted

20    petitioner was in custody in stating ". . . it was clear that we are not talking about an interrogation

21    _____

22           [1] [State court's footnote] Andre now claims that he was never told that he was free to
      leave at any time, but he did not challenge the trial court's finding to that effect.

REPORT AND RECOMMENDATION
PAGE -13

01  in the custodial sense, we are talking about a custodial interview." (Dkt. 19, Ex. 15, Vol. I,  Jan.

02  9, 2002 transcript at 89-90.)  However, for the reasons described below, petitioner's arguments

03  fail.

04         Under the Antiterrorism and Effective Death Penalty Act of 1996, state court findings of

05  fact are presumptively correct in federal habeas proceedings, and the petitioner bears the burden

06  of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §

07  2254(e)(1).  Here, the state court's finding that petitioner was free to leave the interview is

08  presumed correct and petitioner fails to present clear and convincing evidence to rebut that

09  presumption.  Instead, his arguments are no more than conclusory.

10         Petitioner also otherwise fails to demonstrate that he is in custody in violation of federal

11  law and that the state court decisions were contrary to, or involved an unreasonable application

12  of, clearly established federal law.  A determination of whether an individual is in custody

13  "depends on the objective circumstances of the interrogation, not the subjective views harbored

14  by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511

15  U.S. 318, 323 (1994).  "The only relevant inquiry is how a reasonable man in the suspect's

16  position would have understood the situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

17  In this case, as found by the Washington Court of Appeals, *Miranda* warnings were not necessary

18  where petitioner voluntarily came to the station to discuss the allegations against him, agreed to

19  allow his statement to be recorded, was not in a locked room, and was told he was free to leave.

20  *See, e.g., California v. Beheler*, 463 U.S. 1121, 1121-22, 1125 (1983) (*Miranda* warnings not

21  required when suspect was not placed under arrest, voluntarily came to station, and was allowed

22  to leave unhindered after brief interview); *United States v. Norris*, 428 F.3d 907, 912 (9th Cir.

REPORT AND RECOMMENDATION
PAGE -14

01 | 2005) (defendant was not in custody for purposes of *Miranda* where he voluntarily accompanied

02 | officers to the station, was told he was free to terminate the interview at any time and was not

03 | under arrest, was never restrained in any way, and was taken home by the officers at the

04 | completion of the interview).

05 |    Finally, petitioner takes out of context and misconstrues the statement made by the

06 | prosecutor.  In fact, in making the statement excerpted by petitioner here, the prosecutor was

07 | arguing that petitioner was not in custody at the time of his statements to the police. (*See* Dkt. 19,

08 | Ex. 15, Vol. I, Jan. 9, 2002 transcript at  89.)

09 |    In sum, petitioner fails to establish that, given the absence of *Miranda* warnings, he is in

10 | custody in violation of federal law and that the state court decisions were either contrary to, or

11 | involved an unreasonable application of, clearly established federal law.  As such, his first ground

12 | for habeas relief should be denied.

13 | Ground Two

14 |    In his second ground for relief, petitioner asserts insufficient evidence at trial to prove he

15 | touched the victim in this case for the purpose of sexual gratification.  He avers that there was, in

16 | fact, no such evidence presented at trial.  However, for the reasons described below, the Court

17 | concludes that this claim lacks merit.

18 |    In reviewing an insufficiency of the evidence claim, the Court must "view the record as a

19 | whole in the light most favorable to the prosecution."  *Gordon v. Duran*, 895 F.2d 610, 612 (9th

20 | Cir. 1990).  The question is "whether ' *any* rational trier of fact could have found the essential

21 | elements of the crime beyond a reasonable doubt.'"  *Id*. (quoting *Jackson v. Virginia*, 443 U.S.

22 | 307, 319 (1979)).  The Court affords significant deference to the trier of fact *Wright v. West*, 505

REPORT AND RECOMMENDATION
PAGE -15

01 U.S. 277, 296 (1992).

02          In considering this issue, the Washington Court of Appeals held as follows:

03          Andre contends that the evidence was not sufficient to convict him of first
        degree child molestation.  He claims the State failed to prove that he touched H.L. for
04      the purpose of gratifying his (or H.L.'s) sexual desire.

05          The test for determining whether evidence is sufficient to support a conviction
        is whether, after viewing the evidence in the light most favorable to the State, any
06      rational trier of fact could have found guilt beyond a reasonable doubt.      State v.
        Tilton, 149 Wn.2d 775, 786, 72 P.3d 735 (2003).  By claiming the evidence was
07      insufficient, the defendant admits the truth of the State's evidence and all inferences
        that can reasonably be drawn from it.      Tilton, 149 Wn.2d at 786.  Circumstantial
08      evidence is as reliable as direct evidence.  State v. Thomas, 150 Wn.2d 821, 874, 83
        P.3d 970 (2004).

09
10          Andre was found guilty of first degree child molestation, in violation of RCW
        9A.44.083:

11              A person is guilty of child molestation in the first degree when the
            person has, or knowingly causes another person under the age of eighteen to
12          have, sexual contact with another who is less than twelve years old and not
            married to the perpetrator and the perpetrator is at least thirty-six months
13          older than the victim.

14      "'Sexual contact' means any touching of the sexual or other intimate parts of a person
        done for the purpose of gratifying sexual desire of either party or a third party."
15      RCW 9A.44.010(2).  A jury may infer that touching was for the purpose of sexual
        gratification if an adult male is proven to have touched the sexual or intimate parts of
16      a young girl unrelated to him and for whom he is not performing a caretaking
        function."  State v. Ramirez, 46 Wn. App. 223, 226, 730 P.2d 98 (1986).

17
18          H.L. testified that Andre sometimes lay down with her when he tucked her in
        at night.  He rubbed her back to help her fall asleep, which was okay with her, but he
19      also touched her on her breasts, butt, and between her legs.  He touched her in each
        place both over and under her clothes.  Andre also made H.L. touch his penis.  He
20      rubbed against her with his penis in a movement she described as "humping."  H.L.
        said it happened almost every night.

21          Andre is not related to H.L. and was not performing a caretaking function
        when he touched her on her sexual parts.  Furthermore, the frequency of the contacts
22      belies his assertion that he touched her on those parts inadvertently.      See State v.

REPORT AND RECOMMENDATION
PAGE -16

01  <u>Whisenhunt</u>, 96 Wn. App. 18, 980 P.2d 232 (1999) (judge could reasonably infer that
     defendant acted for the purpose of sexual gratification when he reached his arm over
02  the seat of a bus and touched her in the vaginal area on three separate occasions).
     The evidence was sufficient to support Andre's convictions.

03

04  (Dkt. 19, Ex. 11 at 5-7.)

05      As described by the Washington Court of Appeals, the "sexual contact" required for a

06  charge of child molestation in the first degree includes "any touching of the sexual or other

07  intimate parts of a person done for the purpose of gratifying sexual desires of either party."  RCW

08  9A.44.010(2) and 9A.44.083.  Here, the evidence as described by the state court belies petitioner's

09  contention that there was no evidence presented at trial to prove that he touched the victim in this

10  case for the purpose of sexual gratification.  Further, viewing that evidence in the light most

11  favorable to the prosecution, the Court stands assured that a rational trier of fact could conclude

12  beyond a reasonable doubt that petitioner's actions were committed for the purpose of sexual

13  gratification.  Accordingly, petitioner's second ground for relief should be denied.

14                                 <u>Ground Seven</u>

15      In his seventh ground for relief, petitioner argues that juror misconduct deprived him of

16  his Fourteenth Amendment due process right to a fair trial.  Petitioner asserts that the victim's

17  credibility was a key issue in this case, pointing to her previous false allegations against Lori

18  Levinson and stating that she raised new allegations for the first time at trial and that her testimony

19  conflicted with her pre-trial statements.  Petitioner asserts that, in an effort to minimize these

20  concerns, several jurors made comments regarding the victim's ADD.  He maintains that these

21  comments constituted extrinsic evidence jeopardizing his right to a fair trial.  However, again, the

22  Court concludes that this ground for relief lacks merit.

REPORT AND RECOMMENDATION
PAGE -17

01          Jurors have a duty to consider during their deliberations only that evidence presented to

02 them in open court. *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991).

03 "Evidence not presented at trial, acquired through out-of-court experiments or otherwise, is

04 deemed 'extrinsic.'" *Id.* "'The jury's consideration of extraneous information deprives defendants

05 of the opportunity to conduct cross-examination, offer evidence in rebuttal, argue the significance

06 of the information to the jury, or request a curative instruction.'" *Id.* at 823 (quoting *United States*

07 *v. Bagnariol*, 665 F.2d 877, 884 n.3 (9th Cir. 1981)).  However, a petitioner is entitled to a new

08 trial only where there existed a reasonable possibility that the extrinsic material contributed to the

09 verdict. *See United States v. Mills*, 280 F.3d 915, 921 (9th Cir. 2002).  "[T]he presence of a

10 single improperly influenced juror" supports the existence of such a possibility. *Rodriguez v.*

11 *Marshall*, 125 F.3d 739, 745 (9th Cir. 1997), *overruled in part on other grounds by Payton v.*

12 *Woodford*, 346 F.3d 1204 (2003). "[G]reat weight [is placed] on the nature of the extraneous

13 information. . . .  Juror misconduct which warrants relief generally relates 'directly to a material

14 aspect of the case.'" *Id.* at 744 (quoted and cited cases omitted).

15          In this case, petitioner moved for a new trial based on jury misconduct after an investigator

16 he hired gathered information regarding the jury's consideration of evidence related to ADD.  The

17 trial court held a hearing, taking the testimony of several jurors. (Dkt. 19, Ex. 15 Vol. VI, March

18 8, 2002 transcript at 752-81, and April 5, 2002 transcript at 790-818.)  As described by the

19 Washington Court of Appeals, three out of the five jurors from whom testimony was taken

20 testified as follows:

21          Juror Reinhart Schaefer testified that he worked with someone for about 17

22

REPORT AND RECOMMENDATION
PAGE -18

01   years whose son had ADD.[2]  During deliberations, he told the jury that his co-worker
     described his son as "literal-minded" and said he "needed to have exact questions put
02   to him."  Schaefer said this came up in the context of talking about a "difficult
     question by the defense attorney to the girl."  He also said that during deliberations
03   there was "not a lot of concentration on ADD."

04          Juror Kimberly Thomas, a school teacher, said the issue of ADD came up in
     the context of discussing H.L.'s "credibility."  She said ADD was an "element" of that
05   credibility, in addition to H.L.'s age and the pressure of testifying.  Thomas said she
     had no expertise in ADD, it was her first year of teaching, and she had no experience
06   teaching children with ADD.  Thomas told the jury that another teacher who suffered
     from ADD told her "how seemingly innocuous things to us could be a distraction such
07   that a person with ADD could not focus on anything but that distraction."

08          Juror Phillip McBeth testified that during deliberations some jurors related
     their experiences with ADD including the fact that children with ADD may need to
09   have "repeated" and "specific" instructions.

10
     (*Id*., Ex. 3 at 14-16 (footnotes with citations to record omitted.))  A fourth juror testified that three
11
     out of her twelve grandchildren have ADD, that she did not share any of her experiences with
12
     these grandchildren with the jury or participate in any jury discussions concerning ADD, and that
13
     she only remembered one juror mentioning having some experience with ADD, but not saying
14
     anything particularly significant.  (Dkt. 19, Ex. 15, Vol VI, March 8, 2002 transcript at 764-72.)
15
     The fifth juror testified that ADD was discussed as one of several factors relevant to a
16
     determination of the victim's credibility, particularly as it related to the victim's difficulty in
17
     answering questions posed by the attorneys in this case.  (*Id*. at 773-81.)  She added that, while
18
     she has a daughter with a learning disability, she did not believe she brought that fact up in the
19
     discussion, and that she did not recall any other jurors making any pivotal contributions to the
20

21   _____
22          [2] [State court footnote] He and his coworker had about a dozen conversations about his
     son's condition over the years.

01  discussion as to their knowledge of or personal experiences with ADD.  (*Id*.)

02       The trial court heard oral argument  from the parties and denied petitioner's motion for

03  a new trial upon concluding that the jurors had not impermissibly relied on extrinsic evidence as

04  to ADD.  (*See* Dkt. 19, Ex. 15, Supp. Rep't of Proceedings, April 19, 2002 transcript at 61-91.)

05  As described by the Washington Court of Appeals, the trial court reasoned as follows:

06           In denying Andre's motion for a mistrial, the court found that the jurors'
         comments did not represent specialized knowledge, but rather were the type of
07       "comments and information that we expect them to bring to jury service."  The court
         pointed out that ADD is a "common diagnosis" and therefore any jury is likely to
08       contain jurors with direct or indirect experience with it. The court also concluded that
         even if the information considered by the jury was extrinsic evidence, it did not affect
09       the verdict.  The court noted that the crux of the case was whether the jury believed
         H.L., not ADD.

10

11  (*Id*. at 16.)  The Washington Court of Appeals upheld the trial court's ruling on appeal:

12           Andre relies on and analogizes to <u>Halverson v. Anderson</u>, 82 Wn.2d 746, 752,
         513 P.2d 827 (1973), and <u>State v. Briggs</u>, 55 Wn. App. 44, 59, 776 P.2d 1347
13       (1989).  In <u>Halverson</u>, a minor who was injured in a car accident brought an action
         claiming future wage loss.  At trial, the minor testified that he wanted to be an airline
14       pilot, but because of his injuries, decided to pursue a career as a surveyor.  The jury
         did not have evidence of wages for pilots or surveyors.  During deliberations, a juror
15       told the others what the salaries were for airline pilots and surveyors.  The Supreme
         Court affirmed the trial court's order for a new trial because the wage information
16       introduced into deliberations was akin to expert testimony and should have been
         subject to objection, cross examination, explanation and rebuttal.  <u>Halverson</u>, 82
17       Wn.2d at 747.

18           In <u>Briggs</u>, the central issue at trial was whether the defendant, who had a
         profound stutter, could control or refrain from stuttering.  In voir dire, a juror
19       intentionally withheld information about his speech disorder.[3]  During deliberations,
         the juror discussed his own history and knowledge of speech disorders.  This court
20       held that the information imparted by the juror was outside the realm of common life

21

         _____

22         [3] [State court footnote] Counsel did not question the jurors about their knowledge of or
    experience with ADD in this case.

REPORT AND RECOMMENDATION
PAGE -20

01 experience and the juror's misconduct required a new trial. <u>Briggs</u>, 55 Wn. App. at 59.

02
03 Unlike <u>Halverson</u> and <u>Briggs</u>, the information imparted by jurors Schaefer, Thomas and McBeth was not highly specialized, technical or specific. None of the jurors had ADD or particular knowledge about ADD. The information they had was based on their common life experience. In addition, the jurors' information was very similar to the evidence about ADD presented at trial. A Special Education teaching assistant testified that H.L.'s medication helped her to "focus" and "understand directions." She also said that young students with ADD are "easily distracted" by "sound" and "visual things." Both H.L.'s father and mother testified that her medication for ADD helped her to concentrate. And in contrast to<u>Briggs</u>, ADD was not the central issue in the case. As indicated by the trial court, the central issue was whether H.L. was telling the truth about her allegations against Andre. H.L.'s age, her testimony, her demeanor, her prior false allegation, and her ADD were all part of the jury's assessment of her credibility. The court did not abuse its discretion in concluding that the information shared by the jurors was not extrinsic evidence, but rather common life experience, and that there was no prejudice to Andre.[4]

11 (*Id*. at 16-18 (footnotes with citations to record omitted.))

12 As noted by the state courts and argued here by respondent, jurors are expected to rely on

13 their personal experience and common sense in reaching a verdict. *See, e.g.*, *Smith v. Phillips*, 455

14 U.S. 209, 217 (1982) ("[I]t is virtually impossible to shield jurors from every contact or influence

15 that might theoretically affect their vote."); *Grotemeyer v. Hickman*, 393 F.3d 871, 878-81 (9th

16 Cir. 2004) ("The mere fact that the jury foreman brought her outside experience to bear on the

17 case is not sufficient to make her alleged statements violate Grotemeyer's constitutional right to

18 confrontation."; noting boilerplate jury instruction language directing jurors to draw reasonable

19 inferences in light of their experience and common sense; "Varied juror experience is a virtue that

21 [4] [State court footnote] We also conclude the jurors' statements Andre relied on inhere in the verdict. Statements reflecting the thought processes that led the jury to reach its verdict inhere in the verdict and may not be used to impeach it. <u>Breckenridge v. Valley General Hospital</u>, 150 Wn.2d 197, 204-05, 75 P.3d 944 (2003).

REPORT AND RECOMMENDATION
PAGE -21

01 assists juries in ascertaining the truth."), *cert. denied*, 126 S.Ct. 177 (2005); *Navarro-Garcia*, 926

02 F.2d at 821-22 ("Inevitably, 'jurors must rely on their past personal experiences when hearing a

03 trial and deliberating on a verdict.'") (quoting *Hard v. Burlington No. RR*, 812 F.2d 482, 486 (9th

04 Cir. 1987)).  Here, petitioner fails to demonstrate that the state courts erred in determining that

05 the ADD information discussed by the jurors derived from common life experience and did not

06 constitute impermissible extrinsic evidence.  Moreover, as noted by the Washington Court of

07 Appeals, the information discussed by the jurors did not substantially differ from the ADD

08 evidence discussed at trial.  (*See* Dkt. 19, Ex. 15, Vol. II, Jan. 15, 2002 transcript at 172-73, Vol.

09 III, Jan. 16, 2002 transcript at 260-63, and Vol. V, Jan. 22, 2002 transcript at 637-39.)     *Cf*.

10 *Navarro-Garcia*, 926 F.2d at 821-22 (describing instances wherein a juror's personal experiences

11 may constitute extrinsic evidence to include where a juror has personal knowledge regarding the

12 parties or the issue involved in the litigation that might affect the verdict     *or where the jury*

13 *considers the juror's past personal experiences without any record evidence on a given fact, "as*

14 *personal experiences are relevant only for purposes of interpreting the record evidence."* )

15 (emphasis added).  Finally, as found by both the trial and appellate courts, even if this information

16 could be deemed extrinsic evidence, this Court finds significant the fact that ADD was merely one

17 aspect of the credibility decision, rather than the central issue of the victim's credibility.     *See*

18 *Rodriguez*, 125 F.3d at 744.

19        For the reasons described above, petitioner fails to show that he is custody in violation of

20 federal law and that state court decisions were either contrary to, or involved an unreasonable

21 application of, clearly established federal law.  Accordingly, the Court should also deny

22 petitioner's seventh ground for relief.

REPORT AND RECOMMENDATION
PAGE -22

01                                                    V

02          Petitioner's habeas petition should be denied, and this action dismissed.  A proposed Order

03  of Dismissal accompanies this Report and Recommendation.  No evidentiary hearing is required

04  as the record conclusively shows that petitioner is not entitled to relief.

05          DATED this 6th day of March, 2007.

06

07                                                    _____
                                                      Mary Alice Theiler
08                                                    United States Magistrate Judge

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -23